UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| YESSENIA FIGUEROA,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE, N.A.,<br><br>Defendant. | Civ. No. 2:23-cv-482 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.**

Before the Court is an action by Plaintiff Yessenia Figueroa against Defendant Capital One, N.A. ("Capital One") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* After Defendant moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 15, the parties were ordered to submit briefing regarding whether Plaintiff has Article III standing to bring her claims in this Court. ECF No. 23. After careful consideration of the parties' submissions, the Court holds that Plaintiff has sufficiently demonstrated Article III standing but has failed to state a claim under Rule 12(b)(6). For the reasons set forth below, Capital One's motion to dismiss, ECF No. 15, is **GRANTED**.

### I.   BACKGROUND

Plaintiff Yessenia Figueroa obtained a credit disclosure from Experian Information Solutions, Inc. ("Experian") on November 5, 2022. Compl. ¶ 10, ECF No. 1. The tradelines reported on the disclosure included monthly payment amounts of $49.00, $72.00, and $73.00 from Capital One accounts. Compl. ¶ 7. However, these accounts were previously closed by Capital One. Compl. ¶ 8. Plaintiff alleges that because the accounts have been closed, the entire balance is due presently and that she has neither the right nor the obligation to satisfy these debts in monthly installments. Compl. ¶ 8. On or about November 28, 2022, Plaintiff submitted a letter to Experian disputing the three Capital One tradelines. Compl. ¶ 11. In her dispute letter, Plaintiff explained that the account reflected by these tradelines were closed. Compl. ¶ 12. She stated that because the accounts were closed, she no longer had an obligation to make monthly payments to Capital One. Compl. ¶ 12. She asked Experian to report the tradelines with a scheduled monthly payment of $0.00. Compl. ¶ 12. Experian forwarded Plaintiff's customer dispute to Capital One. Compl. ¶ 13. On January 24, 2023, Plaintiff obtained another Experian credit disclosure,

which showed that Experian and Capital One failed or refused to report the scheduled monthly payment amount as $0.00. Compl. ¶ 14.

Plaintiff brought this action three days later alleging violations of the FCRA.[1] *See generally* Compl. Plaintiff alleges that Capital One negligently and willfully violated the FCRA by failing to properly investigate Plaintiff's dispute as required under 15 U.S.C. § 1681s-2(b) and failing to direct Experian to report its tradelines with a scheduled monthly payment amount of $0.00. Compl. ¶¶ 21-32. Specifically, Plaintiff argues that "[p]er credit reporting industry standards and the Credit Reporting Resource Guide, which is the credit reporting manual created by the Consumer Data Industry Association, furnishers are not to report a monthly payment on a closed account." Compl. ¶ 9. As a result, Plaintiff argues that the tradelines listed in her Experian credit disclosures are inaccurate and create a misleading impression of her consumer credit file. Compl. ¶ 24. She asserts that the tradelines "create a false impression to potential credit grantors that [she] continues to have a monthly obligation on a debt, when in fact there is no such monthly obligation." Compl. ¶ 15. Notably, however, Plaintiff does not assert in her complaint that her credit reports have actually been published to any potential credit grantor.

## II.  PROCEDURAL HISTORY

Plaintiff filed the present action on January 27, 2023. ECF No. 1. Capital One moved to dismiss the complaint on March 14, 2023. ECF No. 15. Plaintiff filed a late opposition brief on April 18, 2023. ECF No. 17. Capital One filed a reply brief on May 3, 2023. ECF No. 20. On August 22, 2023, this Court denied Capital One's motion without prejudice and issued a *sua sponte* order directing the parties to submit supplemental briefing regarding whether Plaintiff has Article III standing to bring her claims in light of the U.S. Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Plaintiff timely filed her brief on September 1, 2023. Pl.'s Supp. Br., ECF No. 24. Capital One did not file a response.

## III.  LEGAL STANDARD

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. One element of this case-or-controversy requirement is that Plaintiff, as the party invoking federal court jurisdiction, must establish that she has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To satisfy Article III's standing requirements, Plaintiff must "clearly . . . allege facts demonstrating" all three elements of constitutional standing: (1) an "injury in fact," (2) that is "fairly traceable" to Defendants' challenged conduct, and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). "To establish injury

---

[1] The parties stipulated to the dismissal of Experian from the case with prejudice. ECF No. 22.

in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan,* 504 U.S. at 560). Concrete injuries can be tangible or intangible. *See TransUnion LLC v. Ramirez,* 594 U.S. 413, 425 (2021). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 188 (3d Cir. 2006). The Court presumes that it "lack[s] jurisdiction unless the contrary appears affirmatively from the record." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.,* 903 F.3d 278, 288 (3d Cir. 2018) (citations and quotation marks omitted).

## IV. DISCUSSION

### A. Plaintiff Sufficiently Alleges Article III Standing

At issue here is the first element of constitutional standing: injury in fact. The Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion,* 594 U.S. at 426 (quoting *Spokeo,* 578 U.S. at 341). "[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427. "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts— such as physical harm, monetary harm, or various intangible harms including . . . reputational harm." *Id.* at 417 (quoting *Spokeo,* 578 U.S. at 340-41).

Based on these principles, Plaintiff asserts in part that she suffered an injury in fact because Capital One's "false and misleading reporting to a credit bureau about Plaintiff's obligation on a debt has a close relation[]ship to reputational harms such as defamation and common law fraud." Pl.'s Supp. Br. 4.[2] The U.S. Supreme Court extensively analyzed the reputational harm caused by defamation for standing purposes in its recent *TransUnion* decision. There, the Court decided whether class members, who were each erroneously labeled as potential terrorists in their respective credit reports, had Article III standing to bring their FCRA claims against TransUnion, the credit reporting agency that issued the reports. In order to determine whether the individuals suffered a harm related to the tort of defamation, the Court noted that "[u]nder longstanding American law, a person is injured

---

[2] Plaintiff also asserts that as a result of Capital One's "failure to correct the false and misleading information on her credit report, she suffered credit and emotional damages of stress, anxiety, frustration, resulting in crying spells, loss of sleep and weight gain." Pl.'s Supp. Br. 4. She also alleges that Capital One's "actions or omissions caused Plaintiff to lose time attempting to correct the false information on her credit report." *Id.* Because the Court finds that Plaintiff has suffered harm analogous to defamation, there is no need to address Plaintiff's other allegations of harm.

3

when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party." 594 U.S. at 432 (citations omitted); *see also* Restatement (First) of Torts § 559 (1938). Relying on this definition, the Court determined that the class members whose misleading credit reports were disseminated to third-party businesses "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation[,]" and as such, "suffered a concrete harm that qualifies as an injury in fact." 594 U.S. at 432. By contrast, however, the class members whose misleading credit reports were *not* disseminated to a third party "did *not* suffer a concrete harm[,]" and thus did not have Article III standing to bring their claims. *Id.* at 439, 442 (emphasis added).

Analogizing to the subgroup found to have standing in *TransUnion*, Plaintiff specifically asserts that she suffered a concrete harm when Capital One erroneously reported to Experian, a credit reporting agency, that she owed monthly payment obligations to Capital One. Pl.'s Supp. Br. 5. Lower courts have split on the issue of whether dissemination of a defamatory statement to a credit reporting agency, as opposed to the potential creditors at issue in *TransUnion*, creates a concrete harm. In *Campbell v. Portfolio Recovery Associates LLC*, the district court held that because the distribution of inaccurate information to a credit reporting agency was "[u]nlike the disclosures at issue in *TransUnion*," it did not constitute a concrete injury for standing purposes. 21CV1322, 2022 WL 657225, at *2 (E.D.N.Y. Mar. 4, 2022). Similarly, in *Spira v. TransUnion LLC*, the district court noted that "not all 'third-parties' are created equal" and held that "credit reporting agencies . . . are not the type of third parties contemplated by the Supreme Court in *TransUnion*[.]" No. 21-CV-2367, 2022 WL 2819469, at *4-5 (S.D.N.Y. July 19, 2022).

However, the *TransUnion* Court did not specify that third-party publication under the FCRA was limited only to potential creditors. Instead, looking to generally accepted principles of tort law, the third party to whom the defamatory information is disseminated must only "understand its defamatory significance." Restatement (Second) of Torts § 577 cmt. c (1977). The Court of Appeals for the Seventh Circuit relied on this principle in *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146 (7th Cir. 2022). There, at issue was whether two plaintiff consumers suffered concrete injuries after debt collectors reported their respective debts to credit reporting agencies without indicating that the debts were disputed by the consumers. *Id.* at 1149-50, 1152. The *Ewing* Court found that the plaintiffs sufficiently demonstrated third-party dissemination by showing that the debt collectors reported false information about the plaintiffs to a credit reporting agency and rejected any reading of *TransUnion* that required the plaintiffs "to make a further showing that the third party *also* shared that false information."[3] *Id.* at 1153-54. To determine whether the

---

[3] In so holding, the *Ewing* court rejected any comparison of credit reporting agencies to printing vendors, to which disclosures have traditionally not been found to rise to actionable publications. 24 F.4th at 1153-54 (citing *TransUnion*, 594 U.S. at 434 n.6). Specifically, the court reasoned that because the consumers "demonstrated third-party dissemination, the [*TransUnion*] Court's reference [in a footnote] to a general requirement that defamatory content is read, not merely processed" was not implicated. *Id.* at 1154 (citing *TransUnion*, 594 U.S. at 434 n.6).

4

dissemination constituted defamation, the court then analyzed whether the credit reporting agency *understood* the defamatory significance of the debt collectors' erroneous reports. *Id.* at 1154. Because the credit reporting agency's assessment of the plaintiff's creditworthiness took into account whether the reported debts were disputed or not, the court found that the agency did understand the defamatory significance of the false information in the reports. *Id.* As such, the plaintiffs "suffered an intangible, reputational injury that is sufficiently concrete for purposes of Article III standing." *Id.*

This Court agrees with the *Ewing* Court's analysis and joins the number of district courts that have recognized instances where dissemination to a credit reporting agency suffices to establish defamatory publication for standing purposes. *See, e.g., Morgan v. LVNV Funding, LLC*, No. 21-12967, 2023 WL 5808365, at *5 (E.D. Mich. Sept. 7, 2023) (citing to *Ewing*'s publication holding favorably but finding that plaintiff lacked concrete injury on other grounds); *Pharms v. Nat'l Credit Sys., Inc.*, No. CV 619-060, 2022 WL 2346623, at *7 (S.D. Ga. June 29, 2022) (finding a credit reporting agency to be a third-party for defamation purposes but noting that false information about plaintiff's debt was further disseminated to potential creditors). By reporting the errant monthly payment obligations to Experian, Capital One has communicated allegedly false information about Plaintiff's financial standing to an entity that understands and uses this information to assess her creditworthiness. Pl.'s Supp. Br. 5. Thus, Plaintiff has demonstrated defamatory publication and has alleged that she suffered a concrete reputational injury sufficient to establish Article III standing for her claims.

### B. Plaintiff Fails to State a Claim Under the FCRA

However, even if Plaintiff has sufficiently alleged Article III standing, the Court finds that Plaintiff has not stated a claim upon which relief may be granted. After review of the parties' previously filed submissions, the Court will grant Defendant's motion to dismiss under Rule 12(b)(6). *Brown v. F.B.I.*, 793 F. Supp. 2d 368, 382 (D.D.C. 2011) ("[T]he Court may grant a 12(b)(6) motion to dismiss sua sponte.").

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotation marks omitted). The complaint's factual allegations need not be detailed, but they must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This

facial-plausibility standard is met where the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"The FCRA was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022) (citation and internal quotation marks omitted). "The FCRA places certain duties on those who furnish information to consumer reporting agencies." *Id.* (citation and internal quotation marks omitted). "The furnisher of information has a duty to provide accurate information to the credit reporting agency, 15 U.S.C. § 1681s–2(a), and the credit reporting agency must investigate promptly any reports of inaccuracies, 15 U.S.C. § 1681s–2(b)." *Cheadle v. Experian*, No. 120CV18183, 2021 WL 3144843, at *3 (D.N.J. July 26, 2021). "To state a viable claim under the FCRA regarding the interplay between the furnisher and the credit reporting agency, a plaintiff must allege that she (1) sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Id.* (citations and internal quotation marks omitted). "[A] showing of inaccuracy is essential to a [Section] 1681s–2(b) claim." *Shechter v. Experian Info. Sols., Inc.*, No. CV205552, 2021 WL 323302, at *3 (D.N.J. Jan. 31, 2021) (second alteration in original) (citation and internal quotation marks omitted). "Only if 'the investigation finds that the information is incomplete or inaccurate' must the furnisher correct the information with the [consumer reporting agencies]." *Mercedes v. Wells Fargo Home Mortg., Inc.*, No. CIV.A. 13-5814, 2015 WL 457299, at *3 (D.N.J. Feb. 3, 2015). "Information is 'inaccurate' within the meaning of the FCRA if it is technically incorrect or if, 'through omission, it creates a materially misleading impression.'" *Stephens v. Equifax, Inc.*, No. CV 22-01940, 2023 WL 8531833, at *4 (D.N.J. Feb. 24, 2023) (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014)).

Here, Plaintiff admits that she still owes the balance of her debt to Capital One. Compl. ¶ 8. Her only contention is that Capital One furnished inaccurate information to Experian by reporting that she owes monthly payment obligations of $49.00, $72.00, and $73.00 when her accounts were closed. Compl. ¶¶ 7-8. Plaintiff specifies that Capital One's reporting is "false and misleading" because it failed to follow a purported industry standard—the Credit Reporting Resource Guide—that requires monthly installments to be reported as $0.00 when the underlying accounts are closed, instead of the monthly amounts previously owed. Compl. ¶ 9.[4]

---

[4] In support of its argument, Capital One attaches several exhibits to its moving brief, including monthly statements from Plaintiff's Capital One account and letters to Plaintiff from Capital One regarding the closure of her accounts.

The Court finds that Plaintiff has failed to allege that the tradelines issued by Capital One contain inaccurate information. Nothing in Capital One's reporting makes plaintiff's obligations look greater than they are. In fact, a report showing a $0.00 monthly obligation would be *more* misleading of Plaintiff's financial obligation, because it would incorrectly suggest that Plaintiff does not owe any balance to Capital One. Further, district courts have "rejected the argument that failure to comply with industry standards violates the FCRA where the information itself is nonetheless true." *Sheridan v. FIA Card Servs., N.A.*, No. C13-01179, 2014 WL 587739, at *5 (N.D. Cal. Feb. 14, 2014) (reviewing FCRA claim where plaintiff asserted that defendant violated industry standards by reporting overdue payments while her bankruptcy was pending); *see also, e.g., Dash v. Midland Funding LLC*, No. 8:16-CV-2128-T-36, 2017 WL 841116, at *3 (M.D. Fla. Mar. 3, 2017) (collecting cases rejecting FCRA claims that rely on violations of industry standards and finding them "persuasive" in the context of a Fair Debt Collection Practices Act claim).

Plaintiff cites to two cases, *Burns v. Trans Union, LLC*, No. CV 4:18-03120, 2019 WL 3890833 (D.S.C. Aug. 19, 2019) and *Friedman v. CitiMortgage, Inc.*, No. 18 CV 11173, 2019 WL 4194350 (S.D.N.Y. Sept. 3, 2019), to argue that "[c]ourts have held that reporting a scheduled monthly payment amount for a closed account is an adequate basis for liability under the FCRA." Opp. Br. 12. However, these cases are distinguishable from the circumstances here. In *Burns*, the plaintiff alleged that the defendant violated the FCRA by listing a monthly payment on its credit line despite the plaintiff's account being closed and charged off. Here, Plaintiff has not alleged that her account has been similarly charged off. In *Friedman*, the court found that a defendant furnished inaccurate information where it erroneously reported that the plaintiff owed the defendant monthly payments and that the plaintiff's pay status was late. However, there, the mortgage loan at issue had been transferred to another lender and the plaintiff was no longer obligated to make any payments to the defendant, causing lenders to believe that he owed more money than he was obligated to pay. As stated *supra*, Plaintiff still owes the balance of her debt to Capital One and the monthly obligations reported by Capital One do not misrepresent the total amount of her debt. "Accordingly, because Plaintiff has failed to identify a factual inaccuracy in [her] credit report, [s]he has not alleged a proper basis upon which to impose FCRA liability on [Capital One]." *Seror v. Equifax*, No. CV 18-14804, 2019 WL 13396463, at *3 (D.N.J. July 8, 2019). Thus, Plaintiff's claims will be dismissed.

## V. CONCLUSION

---

Goldstein Decl., Exs. 1-7. ECF No. 15-2. Plaintiff notes that she has not stipulated to the exhibits' authenticity and that the exhibits are not integral to her claims. Opp. Br. 7-9. She argues that the Court should not consider these exhibits at the motion to dismiss stage, or in the alternative, should treat Capital One's filing as a motion for summary judgment. Opp. Br. 10-11. The Court does not need to decide this issue at this juncture because it does not rely on the exhibits in its finding that Plaintiff has failed to state her claims under Rule 12(b)(6).

For the reasons set forth above, Capital One's motion to dismiss, ECF No. 15, is **GRANTED**. Plaintiff may file within 30 days an amended complaint that cures the deficiencies articulated herein.

An appropriate Order accompanies this Opinion.

_____
WILLIAM J. MARTINI, U.S.D.J.

Date: January 17, 2024